**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRIT F. AUGBORNE, III,<br><br>  Plaintiff<br><br>v.<br><br>DOCTOR HDSP, et. al.<br><br>  Defendants | Case No.: 3:17-cv-00592-RCJ-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 56 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for leave to file a second amended complaint (ECF No. 55) and proposed second amended complaint (ECF No. 56).

After a thorough review, it is recommended that that the motion for leave to file a second amended complaint be granted; that the Eighth Amendment claim against Mike Lopez be allowed to proceed, and the remaining claims and defendants be dismissed with prejudice.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP) and Ely State Prison (ESP). Plaintiff filed his original complaint on September 25, 2017 (ECF No. 1-1); however, while it was awaiting screening he filed a first amended complaint (FAC)

(ECF No. 11). Generally, the FAC alleges that Plaintiff complained of symptoms that turned out to be the shingles virus. He claims that he was not treated and eventually was found non-responsive in his cell. He was taken to Valley Hospital where he was treated and prescribed gabapentin (brand name Neurontin). He took this drug for some period of time until after he was transferred to ESP and it was discontinued. He grieved the issue to no avail and continued to suffer in pain. He mentions that he was told that neither the State nor NDOC were authorized by the FDA to issue the prescribed medication.

District Judge Jones issued an order screening the amended complaint on November 7, 2018. (ECF No. 12.) Plaintiff was allowed to proceed with: an Eighth Amendment claim for deliberate indifference to serious medical needs against a John Doe doctor at HDSP when Plaintiff learns that person's name in Count 8; and, an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Martin in Count 14. Count 8 alleges that a "Nurse E.J." informed defendant John Doe doctor at HDSP that Plaintiff had a serious medical condition, and while the doctor recognized that Plaintiff's condition was an emergency, the doctor did not schedule Plaintiff to be seen immediately and he was subsequently hospitalized. Count 14 of the FAC alleges that Dr. Martin discontinued Plaintiff's medication in April 2017 without evaluation or for any purpose, leaving Plaintiff without any help for his pain. In January of 2018, he received the medication again.

The Eighth Amendment deliberate indifference claims in Counts 1, 2, 3, 4, 5, 6, 7, 9, 11, 12, 13, 16, 17, 18, and the portion of Count 20 alleging a conspiracy were dismissed without prejudice, and with leave to amend.[1] Counts 10, 15, 19, and the remainder of Count 20 were

---

[1] The conclusion of the screening order states that if Plaintiff fails to timely file a second amended complaint, the portions of Counts *4*, 8 and 14 alleging deliberate indifference will proceed (ECF No. 12 at 26); however, the body of the screening order reflects that the deliberate

2

dismissed with prejudice. All of the due process claims were dismissed with prejudice. Plaintiff was given 28 days to file a second amended complaint (SAC), and was advised that if he failed to timely file a SAC, only the Eighth Amendment claims in Counts 8 and 14 would proceed. (ECF No. 12.)

Plaintiff did not timely file a SAC, so the action proceeded with the Eighth Amendment claims against the John Doe HDSP doctor in Count 8 and against Dr. Martin in Count 14. (*See* ECF No. 13.) The Attorney General's Office accepted service on behalf of Dr. Martin on June 11, 2019, and an answer was filed on July 22, 2019. (ECF Nos. 26, 30.)

A scheduling order was issued on July 23, 2019, providing that the deadline to amend was September 23, 2019. (ECF No. 31 at 1-2.)

On September 16, 2019, shortly before the September 23, 2019 deadline, Plaintiff filed a motion stating that he had discovered the name of the unknown HDSP doctor and had filed a SAC to name the defendant; however, he had not in fact filed a SAC. (ECF No. 37.) The court set a hearing on the motion for October 25, 2019. (ECF No. 39.)

At the hearing, Plaintiff advised the court that he reviewed discovery documents that identified Dr. Martin and Dr. Katabay as treating physicians during the time frame alleged in his action. Deputy Attorney General (DAG) Odgers represented that the documents provided to Plaintiff indicated that Dr. Katabay only treated Plaintiff *after* the "man down" incident, and he ordered that Plaintiff be transported to a medical facility for treatment. DAG Odgers suggested that before substituting Dr. Katabay in place of the John Doe HDSP doctor, he could produce to Plaintiff a list of HDSP medical staff on duty during the subject time frame to determine the

---

indifference claim in Count 4 was dismissed with leave to amend, and the due process claim in Count 4 was dismissed with prejudice. Therefore, the only claims allowed to proceed were the Eighth Amendment claims in Counts 8 and 14, discussed *supra*.

3

name of the physician he alleges treated him before the "man down" incident. He also offered to arrange a conference call between Plaintiff, "Nurse E.J.," Nurse Lopez, and himself, to discuss the name of the physician. The court directed DAG Odgers to provide Plaintiff with the list of HDSP staff on duty during the relevant time period, and arrange the suggested telephone conference. Plaintiff made an oral motion to extend the discovery deadline, which the court granted, and extended the discovery deadline to December 20, 2019. The court set a further status conference for November 13, 2019. (ECF No. 40.)

DAG Odgers filed a notice of compliance indicating that the schedule for HDSP for May 13, 14 and 15, 2016, showed a total of eight nurses on the day shift, including Nurse Michael Lopez. On the night shift were two nurses, including Charge Nurse Eunjoo Lim (whom Plaintiff had referred to as "Nurse EJ"). On Saturday, May 14, 2015, there were five nurses on staff during the day shift, including Nurse Lopez, and during the night shift there were two nurses including Charge Nurse Lim. The "man down" was called at 12:26 a.m. on May 15, 2016. Nurse Lopez would have been the nurse identified in the progress notes on May 13, 2016, who instructed Plaintiff to file a kite to be seen by a physician. DAG Odgers also submitted the provider schedule which shows the only provider working on Friday May 13, 2016, was APN Dante Famy. There were no medical providers scheduled to work over the weekend: May 14 or 15, 2016. (ECF Nos, 41, 41-1 to 41-3.)

The court held a status conference on November 13, 2019, to discuss Plaintiff's request to amend Count 8 of the FAC to identify a specific individual in place of the John Doe HDSP doctor. DAG Odgers represented that he was able to coordinate a telephone conference with himself, Plaintiff and Nurse Lim (who was no longer employed by NDOC). Nurse Lim was unable to identify a provider who had any contact with Plaintiff on May 13, 14, or 15, 2016.

DAG Odgers also represented that he spoke with a nurse practitioner, Dante Famy, who was scheduled to work on May 13, 2016; however, Mr. Famy confirmed he had no interaction, knowledge of, or communication with plaintiff. DAG Odgers represented that there was no "M.D" or "D.O." or nurse practitioner who worked during the subject time period. Plaintiff represented that during the relevant time period he was housed in close custody and a nurse would come by his cell every day to check on him and it would have been recorded on video. He requested a copy of the video from DAG Odgers, asserting that it would enable him to identify the physician Nurse Lim allegedly spoke to regarding Plaintiff's medical condition. DAG Odgers represented that in the conference with Nurse Lim, she was unable to recall any events that had taken place. The court ordered DAG Odgers to investigate whether a copy of the video exists.

Plaintiff also represented that he had obtained additional information regarding previous claims that were dismissed—that he had information regarding the FDA possibly being responsible for Dr. Martin stopping his gabapentin medication. DAG Odgers advised the court that there was a "negative outcome" regarding the use of gabapentin that occurred during the 2016-2017 time period which prompted an FDA investigation, and in 2017 the FDA banned the use of the medication which prompted Dr. Martin to discontinue Plaintiff's prescription and order an alternative medication in its place. Plaintiff indicated he had since been placed back on gabapentin. Plaintiff indicated that he wanted to narrow down who stopped the medication, such as Dr. Martin's supervisor, because he did not believe Dr. Martin had a choice in stopping the medication and prescribing a substitute. The court advised Plaintiff he could file a motion but directed him to review Judge Jones' screening order and the requirements for stating deliberate indifference claims and hurdles with respect to vicarious liability. Therefore, Plaintiff's motion to

substitute the name of the still unidentified physician in place of the John Doe HDSP doctor was denied without prejudice. (ECF No. 42.)

DAG Odgers subsequently filed a notice that NDOC did not have a copy of the video Plaintiff referenced. (ECF Nos. 43, 43-1, 43-2.)

On November 15, 2019, Plaintiff filed a motion to amend the scheduling order, stating that he had since learned that discovery would narrow down who the right defendants are in this case. (ECF No. 44.) He stated that Nurse Lim determined that a video does exist and it would discuss what she evaluated in the days leading up to Plaintiff's "man down" and which doctor she relayed the information to. He also noted that Nurse Famy and Nurse Lopez had not yet been located. Finally, he stated it was discovered that Dr. Martin did discontinue Plaintiff's medication because the FDA advised the State it could no longer distribute the medication for his medical issues. Therefore, he said that Dr. Martin may not be the correct defendant.

In denying the motion, the court noted: the defense filing indicated that NDOC does *not* have a copy of the video; that further discovery as to Nurse Famy or Nurse Lopez would be futile since HDSP records reflected that no medical provider was on duty during the relevant time and neither of those nurses was currently a defendant; if the FDA ordered that Plaintiff's medication could not be administered for treatment of his condition, this would not reflect Dr. Martin was deliberately indifferent, but the court nevertheless indicated that Plaintiff might seek to amend his action with respect to the FDA or an NDOC doctor complying with NDOC directives; Plaintiff had ample time to undertake discovery to identify the John Doe doctor and/or the role the FDA played in Dr. Martin's decision to discontinue the medication, and discovery was open for another month; however, at the time, there was no legitimate basis in extending the discovery deadline. (ECF No. 45.)

Five days later, the parties submitted a stipulation for dismissal with prejudice of Dr. Martin. The parties agreed and recommended to the court to extend through December 18, 2019, the period for Plaintiff to amend his pleading to properly name the defendants he believes responsible, and that defense counsel should be given fourteen days to respond to a proposed second amended complaint. (ECF No. 46.) Judge Jones approved the stipulation and ordered Dr. Martin dismissed from the case; gave Plaintiff until December 18, 2019, to file a motion for leave to file a SAC; and gave defense counsel until January 2, 2020, to file a response to the SAC. (ECF No. 47.)

Plaintiff subsequently filed a motion to amend and to reconsider the dismissed defendants. (ECF Nos. 51, 52.)[2] The undersigned denied the motion to amend because it was not accompanied by the SAC; however, it appears that instead of attaching the SAC to the motion as required under the rule, it was filed separately the same date. (ECF Nos. 53, 54.)

Plaintiff filed another motion for leave to amend and proposed SAC (SAC). (ECF Nos. 55, 56.) Defense counsel filed a motion to vacate the dispositive motions deadline pending a ruling on the motion for leave to amend and screening of the SAC (ECF No. 57), but did not oppose the motion to amend. The court will now address the motion for leave to amend and proposed SAC.

## **II. LEAVE TO AMEND**

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after

---

[2] The motion to reconsider the dismissed defendants is for consideration of District Judge Jones; however, it appears to be moot in light of the filing of the SAC and the findings made in this Report and Recommendation.

7

service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

Since there is a stipulation to allow Plaintiff to file a motion for leave to amend and proposed SAC, and defense counsel opted not to oppose that motion, Plaintiff has in effect secured the consent of defense counsel to amend. In light of this, Plaintiff's motion for leave to amend (ECF No. 56) is granted. The court will now screen the proposed SAC.

### III. SCREENING

**A. Standard**

Under the statute governing in forma pauperis proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the

district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's SAC**

    **1. Defendants**

    The court notes that the SAC names as defendants NDOC Medical Director Dr. Romeo Aranas, HDSP Nurse Mike Lopez, HDSP Dr. Katabay, Valley Hospital Dr. Mensha, and HDSP Director of Nursing Bob Faulkner. (ECF No. 55 at 1-3.) There are no substantive allegations, however, with respect to Dr. Mensha or Nursing Director Bob Faulkner; therefore, they should be dismissed. Since Plaintiff has had several opportunities to amend to this point, the dismissal should be with prejudice.

    **2. Allegations**

    It appears that the pages of the SAC are out of order as some of the pages end abruptly and do not flow into the subject matter of the following page. Nevertheless, the court was able to glean the following from the SAC:

    In the week leading up to May 15, 2016, Plaintiff alleges that that he complained to staff about feeling ill and about the rash on his skin from his navel to his lower back, which was obvious to anyone who saw him. He claims that Nurse Lopez and Dr. Katabay refused to evaluate or answer his pleas. He states that he was told to fill out a medical kite, which he concedes he did not do. "Nurse EJ" advised Plaintiff she would place Plaintiff on the medical emergency doctor's list. The doctor said that it would be another week from that day. Then Plaintiff was found non-responsive on May 15, 2016. He was hospitalized and treated at Valley Hospital for a week and was prescribed gabapentin. He was returned to NDOC.

When he transferred to ESP on September 12, 2016, he was still taking gabapentin. Six months later, it was discontinued. Plaintiff alleges that that his medication was not approved by the FDA for the reason Plaintiff was taking it, and that it was prescribed for an "off usage" purpose for his neuropathic pain. Plaintiff alleges that he pleaded with Dr. Martin (who has been dismissed with prejudice) and to Dr. Aranas to have his medication returned and asked why it was discontinued in the first place through medical kites and grievances, to no avail. The medication was eventually reinstated.

**3. Analysis**

**a. Eighth Amendment Deliberate Indifference to Serious Medical Need**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of

the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

**b. Count 1**

In Count 1, Plaintiff alleges that Dr. Aranas violated his rights by "not being honest to the facts surrounding the reasons as to why Plaintiff's medication was discontinued." He avers that if the medication was not approved by the FDA for treatment of Plaintiff's medical condition, Dr. Aranas was responsible for the medication that Plaintiff was receiving and not receiving by giving notice.

Plaintiff's SAC concedes that the discontinuation of his medication was a result of a decision made by the F.D.A. The conduct he attributes to Dr. Aranas is that he asked Dr. Aranas

that the medication be returned and asked why it was discontinued in the first place, but seemingly got no response.

Plaintiff does not allege facts amounting to deliberate indifference as to Dr. Aranas. For one, he concedes that the decision to take away the medication was the result of a directive from the F.D.A. Moreover, he merely alleges that he asked for the medication back and why it was taken. He does not specifically allege that he put Dr. Aranas on notice of a serious medical need that Dr. Aranas ignored. For example, he does not include factual allegations that he told Dr. Aranas that he was suffering in pain as a result of the discontinuation of the medication and whatever substitute medication he was given was ineffective at alleviating his pain, *and then* Dr. Aranas ignored his pleas. Instead, he makes vague reference to kites and grievances without any substantive allegations sufficient to implicate Dr. Aranas under the Eighth Amendment. As such, Count 1 against Dr. Aranas should be dismissed. Plaintiff has had several years to attempt to assert a claim based on the allegation that gabapentin was discontinued. Therefore, the dismissal should be with prejudice.

### c. Count 2

In Count 2, Plaintiff alleges that Mike Lopez violated his rights because Lopez was notified by Plaintiff every day during daily rounds that Plaintiff had an obvious health problem, including boils and red scabbing and a rash, but Plaintiff was left untreated until he was found unconscious in his cell.

Plaintiff states a colorable Eighth Amendment deliberate indifference to serious medical needs claim against Mike Lopez.

Case 3:17-cv-00592-RCJ-WGC    Document 59    Filed 04/17/20    Page 14 of 16

#### d. Count 3

In Count 3, Plaintiff alleges that Dr. Katabay worked every day of the week leading up to May 13, 2016, with the exception of his "RDOs" (presumably referring to "rostered days off"), and Plaintiff complained every day for help from medical staff. Plaintiff states that he showed nursing his physical disposition and notes were taken by Nurse EJ Lim and Mike Lopez and they said they would notify the doctor. Plaintiff received no help and did not see Dr. Katabay until Dr. Katabay ordered Plaintiff sent to Valley Hospital.

Plaintiff does not include allegations that Dr. Katabay actually knew of Plaintiff's condition and disregarded it by either denying him treatment or ignoring him. Instead, he alleges that he complained to nursing staff, and nursing staff said they would notify the doctor, but there is no allegation that that Dr. Katabay was the physician nursing staff spoke to about Plaintiff's condition or otherwise actually knew of Plaintiff's complaints. Therefore, Dr. Katabay should be dismissed. Again, Plaintiff has had years to state a claim against the HDSP doctor defendant he claims failed to treat him for his shingles symptoms at HDSP. Therefore, this claim should be dismissed with prejudice.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's motion for leave to amend (ECF No. 56);

(2) deeming the SAC (ECF No. 55) is the operative pleading;

(3) **DISMISSING WITH PREJUDICE** Dr. Mensha and Nursing Director Bob Faulkner;

(4) allowing Plaintiff to **PROCEED** with his Eighth Amendment deliberate indifference to serious medical needs claim against Nurse Mike Lopez;

(5) **DISMISSING WITH PREJUDICE** the remaining claims against Dr. Aranas and

Dr. Katabay;

(6) Within 30 days of any order adopting and accepting this Report and Recommendation, the Attorney General's Office should be required to file a notice indicating to the court and Plaintiff whether it will accept service on behalf of Mr. Lopez. If it will not accept service for Mr. Lopez, the Attorney General's Office should be directed to file Mr. Lopez's last known address under seal. If the last known address is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address. If service cannot be accepted for Mr. Lopez, Plaintiff shall file a motion requesting issuance of a summons. If the Attorney General's Office does not have a last known address for Mr. Lopez, then Plaintiff must provide the full name and address for service on Mr. Lopez. Plaintiff should be advised that service on Mr. Lopez must be accomplished within 90 days of the date of any order adopting and accepting this Report and Recommendation.

(7) If the Attorney General's Office accepts service for Mr. Lopez, an answer or other responsive pleading shall be filed within 21 days of the date of any order adopting and accepting this Report and Recommendation. Once an answer or other responsive pleading is filed, the court will issue a scheduling order.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 17, 2020

                                             _William G. Cobb_
                                             William G. Cobb
                                             United States Magistrate Judge